DAVID C. BENDER
EARTHJUSTICE
3916 Nakoma Road
Madison, WI 53711
dbender@earthjustice.org
Tel: 202-667-4500 ext. 5228
Fax: 202-667-2356

SARA GERSEN
EARTHJUSTICE
800 Wilshire Boulevard, Suite 1000
Los Angeles, CA 90017
sgersen@earthjustice.org
Tel: 415-217-2005
Fax: 415-217-2040

CHINYERE OSUALA
(*pro hac vice* pending)
EARTHJUSTICE
1625 Massachusetts Avenue, N.W., Suite 702
Washington, D.C. 20036
cosuala@earthjustice.org
Tel: 202-797-5258
Fax: 202-667-2356

*Attorneys for Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| VOTE SOLAR, MICHAEL EISENFELD, JAMES NEIDHART, JEFFREY NEIDHART, STEVEN BAIR, NEIL TRIBBETT, JERRY KNUTSON, VICKIE SLIKKERVEER, THE COLISEUM, INC. (D/B/A THE COLOSSEUM GYM), DAVID FOSDECK, STEPHEN ELLISON, AND ERIN HOURIHAN, <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF FARMINGTON, NEW MEXICO, D/B/A FARMINGTON ELECTRIC UTILITY SYSTEM, <br><br> Defendant. | CASE NO. 1:19-cv-00753 <br><br> **COMPLAINT FOR DECLARATORY AND EQUITABLE RELIEF** |

Plaintiffs, Vote Solar, Michael Eisenfeld, James Neidhart, Jeffrey Neidhart, Steven Bair,

Neil Tribbett, Jerry Knutson, Vickie Slikkerveer, The Coliseum, Inc. (doing business as The

Colosseum Gym), David Fosdeck, Stephen Ellison, and Erin Hourihan, through counsel, hereby allege as follows:

## SUMMARY OF ACTION

1. This is an enforcement action against the City of Farmington, New Mexico, doing business as Farmington Electric Utility System, for the utility's failure to implement its obligation under federal law not to discriminate through electricity rates against customers who own solar generation.

2. The Public Utility Regulatory Policies Act of 1978 ("PURPA") seeks to increase the amount of electricity produced by small renewable generators, including rooftop solar generation used by customers to offset and reduce purchases from their local retail utility at issue in this case. One of the obligations imposed on electric utilities through PURPA is to set rates for supplemental electricity—the electricity customers need beyond what they produce themselves—that are not unreasonable or discriminatory. 18 C.F.R. § 292.305(a). Unreasonable or discriminatory rates for electricity from the utility creates a disincentive to self-generate with renewable energy, in conflict with Congress's intent.

3. Plaintiffs bring this action pursuant to 16 U.S.C. § 824a-3(h)(2)(B) because Defendant established unreasonable and discriminatory rates for electricity service for customers who offset some of their electricity purchases with their own solar generation. By adopting those rates, Defendant failed to implement 18 C.F.R. § 292.305(a), which requires Defendant to set rates that are just, reasonable, in the public interest, and non-discriminatory.

## JURISDICTION AND VENUE

4. Jurisdiction is proper in this court pursuant to 28 U.S.C. § 1331. Plaintiffs' claim for relief is provided by federal statute. 16 U.S.C. § 824a-3(h)(2)(B).

5. Plaintiffs satisfied the perquisites in 16 U.S.C. § 824a-3(h)(2)(B) for this lawsuit by petitioning the Federal Energy Regulatory Commission ("FERC") to enforce the requirements of 16 U.S.C. § 824a-3(f) and 18 C.F.R. § 292.305(a) on April 19, 2019. A copy of that petition is attached as Exhibit A. On June 18, 2019, FERC issued a Notice of Intent Not to Act, stating "Our decision not to initiate an enforcement action means that Petitioners may themselves bring an enforcement action against Farmington in the appropriate court." A copy of FERC's Notice is attached as Exhibit B.

6. Venue is proper in this court pursuant to 28 U.S.C. § 1391(b) because the Defendant resides in this district and the events and omissions arose in this district.

## PARTIES

7. Plaintiff Vote Solar is a non-profit organization whose mission is to make solar a mainstream energy resource across the United States. Since 2002, Vote Solar has worked to expand access to solar power. Vote Solar's principal place of business is 360 22nd Street, Suite 730, Oakland, California 94612. Vote Solar has associational standing to bring this action on behalf of its members who are qualifying facilities, including Mr. Eisenfeld, Dr. James Neidhart, Dr. Jeffrey Neidhart, Mr. Bair, Mr. Tribbett, Mr. Knutson, Ms. Slikkerveer, Mr. Fosdeck, Mr.

Ellison, and Ms. Hourihan.  Protecting its qualifying facility members from discriminatory rates imposed by electric utilities is central to the mission of Vote Solar.

8. Plaintiff James Neidhart is a residential electric customer of Defendant and the owner of a 7.2 kilowatt rooftop solar system, which is a "small power producer" within the meaning of 16 U.S.C. § 824a-3(h)(2)(B) and a "qualifying facility" under 18 C.F.R. § 292.203(a).  Dr. James Neidhart submitted an Application for Parallel Operation with Defendant on July 13, 2017, and is subject to the Residential Standby Service Rider that Defendant approved in January 2017.

9. Plaintiff Jeffrey Neidhart is a residential electric customer of Defendant and the owner of a 20.1 kilowatt rooftop solar system, which is a "small power producer" within the meaning of 16 U.S.C. § 824a-3(h)(2)(B) and a "qualifying facility" under 18 C.F.R. § 292.203(a).  Dr. Jeffrey Neidhart submitted an Application for Parallel Operation with Defendant on August 22, 2017, and is subject to the Residential Standby Service Rider Defendant approved in January 2017.

10. Plaintiff Steven Bair is a residential electric customer of Defendant and the owner of an 11 kilowatt rooftop solar system, which is a "small power producer" within the meaning of 16 U.S.C. § 824a-3(h)(2)(B) and a "qualifying facility" under 18 C.F.R. § 292.203(a).  Mr. Bair submitted an Application for Parallel Operation with Defendant on May 15, 2017, and is subject to the Residential Standby Service Rider Defendant approved in January 2017.

11.     Plaintiff Neil Tribbett is a residential electric customer of Defendant and the owner of a 4.06 kilowatt rooftop solar system, which is a "small power producer" within the meaning of 16 U.S.C. § 824a-3(h)(2)(B) and a "qualifying facility" under 18 C.F.R. § 292.203(a).  Mr. Tribbett submitted an Application for Parallel Operation with Defendant on January 12, 2018, and is subject to the Residential Standby Service Rider Defendant approved in January 2017.

12.     Plaintiff Jerry Knutson is a residential electric customer of Defendant and the owner of a 5.8 kilowatt rooftop solar system, which is a "small power producer" within the meaning of 16 U.S.C. § 824a-3(h)(2)(B) and a "qualifying facility" under 18 C.F.R. § 292.203(a).  Mr. Knutson submitted an Application for Parallel Operation with Defendant on March 28, 2018, and is subject to the Residential Standby Service Rider Defendant approved in January 2017.

13.     Plaintiff Vickie Slikkerveer is a residential electric customer of Defendant and the owner of a 3.9 kilowatt rooftop solar system, which is a "small power producer" within the meaning of 16 U.S.C. § 824a-3(h)(2)(B) and a "qualifying facility" under 18 C.F.R. § 292.203(a).  Ms. Slikkerveer submitted an Application for Parallel Operation with Defendant on March 20, 2017, and is subject to the Residential Standby Service Rider Defendant approved in January 2017.

14.     Plaintiff The Coliseum, Inc. ("The Coliseum") is domestic corporation located in Farmington, doing business as The Colosseum Gym.  The Coliseum is a Small General Service[1] electric customer of Defendant and the owner of an 11.04 kilowatt rooftop solar system, which is a "small power producer" within the meaning of 16 U.S.C. § 824a-3(h)(2)(B) and a "qualifying facility" under 18 C.F.R. § 292.203(a).  Crystal Williams is the owner of The Coliseum and submitted an Application for Parallel Operation with Defendant on July 27, 2017.  The Coliseum is subject to the Small Commercial Standby Service Rider Defendant approved in January 2017.

15.     Plaintiff David Fosdeck is a residential electric customer of Defendant.  Mr. Fosdeck submitted an Application for Parallel Operation with Defendant on March 12, 2019 for a 1.84 kilowatt solar system, which is a "small power producer" within the meaning of 16 U.S.C. § 824a-3(h)(2)(B) and a "qualifying facility" under 18 C.F.R. § 292.203(a).  Upon submitting the Application for Parallel Operation, Defendant provided Mr. Fosdeck an Electricity Bill Calculator that estimates Mr. Fosdeck will pay a monthly standby charge of $13.40 as a "Residential Solar DG customer" after Mr. Fosdeck connects his solar generation.  Mr. Fosdeck certified his solar generation under 18 C.F.R. § 292.207(a) in FERC Docket No. QF19-1083-000.

16.     Plaintiff Stephen Ellison is a residential electric customer of Defendant.  Mr. Ellison submitted an Application for Parallel Operation with Defendant on February 19, 2019 for a 6.48 kilowatt rooftop solar system, which is a "small power producer" within the meaning of 16 U.S.C. § 824a-3(h)(2)(B) and "qualifying facility" under 18 C.F.R. § 292.203(a).  Upon

---

[1] The Small General Service customer class applies to non-residential customers with usage below 15,000 kilowatt-hours per month.

submitting the Application for Parallel Operation, Defendant provided Mr. Ellison an Electricity Bill Calculator that estimates Mr. Ellison will pay a monthly standby charge of $47.17 as a "Residential Solar DG customer" after Mr. Ellison connects his solar generation.  Mr. Ellison certified his solar generation 18 C.F.R. § 292.207(a) and in FERC Docket No. QF19-1082-000.

17. Plaintiffs Erin Hourihan and Michael Eisenfeld are residential electric customers of Defendant and the owners of a 4.7 kilowatt rooftop solar system connected to Defendant's system in 2011.  Although they are currently grandfathered and not paying the Residential Standby Service Rider, Ms. Hourihan and Mr. Eisenfeld intend to expand their solar generation by installing a ground-mounted 7.89 kilowatt solar system, which is a "small power producer" within the meaning of 16 U.S.C. § 824a-3(h)(2)(B) and a "qualifying facility" under 18 C.F.R. § 292.203(a).  Installing the additional generation capacity will terminate Ms. Hourihan and Mr. Eisenfeld's grandfathered status and subject them to the Residential Standby Service Rider.  Ms. Hourihan submitted an Application for Parallel Operation with Defendant for their expanded solar generation on March 20, 2019.  Upon submitting the Application for Parallel Operation, Defendant provided Ms. Hourihan an Electricity Bill Calculator that estimates Ms. Hourihan and Mr. Eisenfeld will pay a monthly standby charge of $55.31 as a "Residential Solar DG customer" once their expanded solar generation is connected.  Ms. Hourihan and Mr. Eisenfeld certified their expanded solar generation under 18 C.F.R. § 292.207(a) in FERC Docket No. QF19-1084-000.

18. Defendant, City of Farmington, is a New Mexico municipal corporation that owns and operates a retail electric utility doing business as the Farmington Electric Utility System that provides electric utility service to portions of San Juan and Rio Arriba Counties, New Mexico.

Defendant's address is 800 Municipal Drive, Farmington, New Mexico 87401.  Defendant is "nonregulated electric utility" within the meaning of 16 U.S.C. § 824a-3(h) because it adopts its own policies and rates without oversight from a state regulatory authority, such as the New Mexico Public Regulation Commission.  To the extent Defendant implements PURPA, it does so by adopting rates and tariffs, including the "Standby Service Riders" at issue in this case.

## FACTS

Defendant Imposed Additional Charges on Customers With Solar Generation in 2017.

19. Defendant owns and operates a municipal electric utility.  The Farmington City Council determines the prices and terms of electric service in the utility's territory.

20. On or about January 24, 2017, the Farmington City Council adopted a set of new "Standby Service Riders" that included a "monthly standby charge" for residential and small general service solar customers. [2]  A copy of Resolution No. 2017-1616 adopting those charges is attached as Exhibit C.  The Standby Service Riders became effective on March 1, 2017.

21. A solar customer's monthly standby charge depends on the size of the customer's generating equipment, measured in kilowatts, and whether the customer's solar panels are fixed or whether they pivot to track the sun:

---

[2] This Complaint refers to the customers subjected to the Standby Service Riders as solar customers because the riders set rates specifically for customers with solar generation and no other generation type and because solar is the predominate, if not exclusive, type of generation owned by customers of the utility.

| Customer Class | Monthly Fee per Kilowatt of Fixed Solar Generation | Monthly Fee per Kilowatt of Tracking Solar Generation | Tariff No. |
|---|---|---|---|
| Residential Service | $7.28 | $7.01 | Original Rate No. 25; Rider to Third Revised Rate No. 1 |
| Small General Service | $8.05 | $7.72 | Original Rate No. 26; Rider to Third Revised Rate No. 2 |
| Medium General Service | $5.14 | $4.92 | Original Rate No. 28; Rider to Third Revised Rate No. 27 |
| Large General Service | $3.16 | $3.02 | Original Rate No. 29; Rider to Third Revised Rate No. 6 |

22. The Standby Service Riders charge solar customers more for the same level of service as non-solar customers. While all residential customers—with or without solar—pay the same rate for each kilowatt-hour of electricity from the utility,[3] the same minimum monthly charge,[4] and the same monthly customer charge,[5] only solar customers must pay an additional monthly standby charge. For example, a non-solar customer who purchases 500 kilowatt-hours of electricity in a month pays $50.05 in kilowatt-hour charges and the $6.75 customer charge, for a total bill of $56.80. A solar customer with a six kilowatt fixed solar array who also purchases 500 kilowatt-hours of electricity from Defendant during that same month pays $50.05 in kilowatt-hour charges[6] and the $6.75 customer charge, *plus* a $43.68 monthly standby charge for

---

[3] The current Farmington residential rate is $0.10010 per kilowatt-hour for both solar and non-solar customers (before any power cost adjustments and tax adjustments).

[4] The current Farmington residential minimum monthly charge is $12.00 per month (before tax adjustments). This charge applies to both solar and non-solar residential customers. If the customer charge plus the total kilowatt-hour-based charges during a month are less than $12.00, Farmington imposes the minimum $12.00 monthly charge instead.

[5] The current Farmington residential customer charge each month is $6.75. That charge applies to every solar and non-solar residential customer regardless of usage.

[6] 500 kilowatt-hours multiplied by $0.10010 per kilowatt-hour = $50.05.

a total bill of $100.48, which is 77% more for the same amount of electricity in the same month solely because the solar customer has solar generation.

PURPA Prohibits Discriminatory Rates Imposed on Customers
With Their Own Solar Generation.

23. Congress enacted PURPA to encourage Americans to develop renewable energy and reduce their dependence on traditional fossil fuels. H.R. Rep. No. 95-496(IV), 1978 U.S.C.C.A.N. 8454, 1977 WL 9621, at *14 (1978); *FERC v. Mississippi*, 456 U.S. 742, 750–51 (1982). To further that goal, PURPA prohibits electric utilities from charging discriminatory rates to customers who generate their own renewable energy. 16 U.S.C. §§ 824a-3(a), (c); *FERC v. Mississippi*, 456 U.S. at 750–51. Congress deemed such protection necessary to prevent utilities from using discriminatory rates to discourage and therefore undermine Congress's goal of increasing small power generation. Joint Explanatory of the Committee of Conference, P.L. 78-617, reprinted in *FERC Statutes and Regulations* ¶ 5151, at 5105–06; 45 Fed. Reg. 12,214, 12,228–29 (Feb. 25, 1980).

24. Pursuant to Congress's goal of promoting small renewable generation, FERC adopted regulations prohibiting unreasonable and discriminatory rates for customers with their own generation and explained that "a customer should be charged at a rate applicable to a non-generating [customer of the same customer class] unless the electric utility shows that a different rate is justified on the basis of sufficient load or other cost-related data." 18 C.F.R. § 292.305(a)(1)(ii); 45 Fed. Reg. at 12,228. FERC's implementing rules further provide that if a utility justifies a different rate based on such load and other cost-related data, such rate must also (1) be "based on accurate data" showing a difference in costs or loads," and be based on

"consistent systemwide costing principles," such that it would also "apply to the utility's [non-generating] customers with similar load or other cost-related characteristics."  18 C.F.R. § 292.305(a)(2); 45 Fed. Reg. at 12,228.  That requires, among other things, that a solar customer "will not be singled out to lose any interclass or intraclass subsidies to which it might have been entitled had it not generated part of its electric energy needs itself."  45 Fed. Reg. at 12,228.

25. When state regulators and nonregulated utilities like Defendant fail to implement FERC's regulations as required by law, owners of small renewable generation systems can request the district courts to compel proper implementation.  16 U.S.C. § 824a-3(f), (h)(2)(B).

<u>Defendant's Standby Service Riders Are Not Based on Accurate Data Showing a Difference Between Solar and Non-Solar Customers.</u>

26. Farmington's monthly standby charges are not based on accurate data demonstrating that the rates charged to non-solar customers are inappropriate for solar customers because of a difference in loads or costs.

27. In fact, Defendant has no time specific data for residential or small commercial customer loads.  At most, Defendant has total monthly energy use data, which cannot show the loads customers are placing during the peak hours that drive infrastructure costs based on peak demands on Defendant's system.  Without such data, Defendant lacks any basis for comparing solar and non-solar customers' loads and costs and cannot demonstrate that different rates are appropriate for solar customers because of a difference in loads and costs between solar and non-solar customers.

28. Moreover, since no two customers are exactly the same, even within any customer class, the relevant comparison is to the range of customers' loads and costs within a class.  Because Defendant lacks data of the timing of specific customer usage, it necessarily also lacks

data showing that solar customers' costs, loads, or monthly usage is outside the range of non-solar customers.

29. Without data showing that its solar customers have patterns of electric usage outside the range of the non-solar customers, Defendant cannot show that solar customers have a categorically different cost of service necessary to justify a different rate treatment that is non-discriminatory.

<u>The Standby Charges Are Based On Inaccurate Assumptions and Calculations to Synthesize Usage Information in Lieu of Actual Accurate Data.</u>

30. Defendant also failed to base the level of charges in the Standby Service Riders on accurate data. Instead of using actual data on the level and timing of electricity use for solar and non-solar customers in the residential and small commercial classes, Defendant based the Standby Service Riders on incorrect and inaccurate assumptions and calculations of those loads and timing.

31. Defendant purportedly intends that the standby charges collect revenue to cover the investment costs of transmission lines and power plants and other equipment built to meet peak loads during critical peak hours. However, because Defendant lacks actual hourly load data for individual customers, it had to approximate those loads. Defendant's approximations were inaccurate for several reasons. First, Defendant started by applying generic ratios of peak use to total energy usage derived from another utility's non-solar customers. There are no data from Defendant's customers to correlate peak loads to total usage for either solar or non-solar customers. Second, to approximate loads, or "demand" values, for solar customers, Defendant applied several adjustments that were based on incorrect assumptions about the timing of solar generation and that incorrectly matched the timing of a customer's solar generation and that

customer's peak use (*i.e.*, demand).  Third, Defendant calculated both the Standby Service Rider standby charge and the per-kilowatt hour charges imposed on solar customers to recover the same costs, effectively double-counting the same costs.  Fourth, Defendant conflated usage of utility-supplied electricity with the size of the customer's generating system.  The monthly standby charges were purportedly based on the cost of meeting customer loads during peak hours, but the charge is applied to the size of customers' generation instead of the customer's level of usage of electricity from Defendant's system.  There is no correlation between the size of a customer's usage of utility-supplied electricity during peak hours and the size of that customer's generation, much less the one-for-one correlation that Defendant's Standby Service Riders assume.

32. For each of these reasons, the level of charges imposed through the Standby Service Riders are not based on accurate data.

<u>The Standby Charges Are Not Based on Consistent Systemwide Costing Principles.</u>

33. In addition to lacking a basis in accurate data, Defendant's standby charges for solar customers are not based on systemwide costing principles and do not result in similar charges for solar and non-solar customers with similar usage and costs.

34. For the residential and Small General Service classes—the classes to which Plaintiffs belong—Defendant designed electric rates to collect the class's demand-related costs based on the amount of kilowatt-hours each customer uses each month.  Specifically, for the residential class, Defendant primarily collects demand-related costs through a 10 cent charge for each kilowatt-hour residential customers use. Thus, residential customers pay for whatever

demand-related costs they impose based only on how much electricity they use during the month.

35. The standby charges for solar customers deviate from that costing principle by collecting demand-related costs from solar customers through a large fixed charge based on the size of the customer's generating system, in addition to collecting them again through the 10 cent per kilowatt-hour charge. As a result, Defendant applies a different costing principle to solar customers by collecting more demand-related costs from a solar customer through a different and additional charge compared to the pricing principle applied to non-solar customers. As a result, the solar customer will always pay more than the non-solar customer for an identical level and timing of utility-supplied electricity use.

36. Thus, by singling out customers with generation for the fixed monthly standby charge to collect certain fixed costs, while continuing to collect those same fixed costs from customers without generation only through the kilowatt-hour charge, Defendant applies different costing principles in violation of 18 C.F.R. § 292.305(a).

## FIRST CLAIM FOR DECLARATORY AND EQUITABLE RELIEF
### 16 U.S.C. § 824a-3(h)(2)

37. Plaintiffs incorporate paragraphs 1 through 36 above.

38. The Standby Service Riders impose higher and additional charges for customers who self-supply some of their electricity needs with their own solar generation.

39. Defendant lacks the requisite data showing a difference in loads and costs by solar compared to non-solar customers.

40. Defendant also failed to base the level of charges in the Standby Service Riders on accurate data and consistent systemwide costing principles.

41. Therefore, Defendant's Standby Service Riders contain unreasonable and discriminatory charges.

42. By imposing the Standby Service Riders, Defendant fails to implement its obligation under 18 C.F.R. § 292.305(a) to charge only just, reasonable and non-discriminatory rates.

43. Defendant's failure to implement 18 U.S.C.C.F.R. § 292.305(a) is actionable under 16 U.S.C. § 824a-3(f).

WHEREFORE, Plaintiffs request the Court order the following relief:

A. Declare that by adopting and imposing the Standby Service Riders, Defendant fails to implement 18 C.F.R. § 292.305(a) enjoin Defendant's imposition and collection of charges under the Standby Service Riders.

B. Order Defendant to implement 18 C.F.R. § 292.305(a) by imposing the same charges for utility-supplied electricity to solar and non-solar customers unless and until Defendant can justify any different charges based on accurate data showing that the costs and usage of solar customers are outside the range of costs and usage of non-solar customers.

C. Order Defendant to implement 18 C.F.R. § 292.305(a) by imposing only those rates for solar customers that are based on systemwide costing principles such that similar loads and usage by solar and non-solar customers would results in similar charges.

D. Order Defendant to disgorge all money collected pursuant to the unlawful Standby Service Riders and return such funds to the customers from whom they were collected.

E. Order Defendant to pay Plaintiff's attorneys' fees and costs to the extent provided by law.

  F. Order such other relief as the Court deems just and equitable.

DATED: August 16, 2019.

            Respectfully submitted,

            */s/ David C. Bender*
            DAVID C. BENDER
            EARTHJUSTICE
            3916 Nakoma Road
            Madison, WI 53711
            dbender@earthjustice.org
            Tel: 202-667-4500 ext. 5228/Fax: 202-667-2356

            SARA GERSEN
            EARTHJUSTICE
            800 Wilshire Boulevard, Suite 1000
            Los Angeles, CA 90017
            sgersen@earthjustice.org
            Tel: 415-217-2005/Fax: 415-217-2040

            CHINYERE OSUALA
            (*pro hac vice* pending)
            EARTHJUSTICE
            1625 Massachusetts Avenue, N.W., Suite 702
            Washington, D.C. 20036
            cosuala@earthjustice.org
            Tel: 202-797-5258/Fax: 202-667-2356

            *Attorneys for Plaintiffs*