LISA S. GAST, ESQ.
(*pro hac vice*)
KRISTEN CONNOLLY McCULLOUGH, ESQ.
(*pro hac vice*)
Duncan, Weinberg, Genzer & Pembroke, P.C.
1667 K Street, NW
Suite 700
Washington, DC  20006
Telephone:  202-467-6370
Facsimile:  202-467-6379
lsg@dwgp.com
kc@dwgp.com

JENNIFER BREAKELL, ESQ.
City Attorney for the
   City of Farmington, New Mexico
800 Municipal Drive
Farmington, NM 87401
Telephone:  505-599-1122
Facsimile:  505-599-1119
jbreakell@fmtn.org

SEAN M. NEAL, ESQ.
(*pro hac vice*)
Duncan, Weinberg, Genzer & Pembroke, P.C.
915 L Street
Suite 1410
Sacramento, CA  95814
Telephone:  916-498-0121
Facsimile:  916-498-9975
smn@dwgp.com

Attorneys for Defendant
CITY OF FARMINGTON, NEW MEXICO
D/B/A Farmington Electric Utility System

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| VOTE SOLAR; MICHAEL EISENFELD; JAMES NEIDHART; JEFFREY NEIDHART; STEVEN BAIR; NEIL TRIBBETT; JERRY KNUTSON; VICKIE SLIKKERVEER; THE COLISEUM, INC. (D/B/A THE COLOSSEUM GYM); DAVID FOSDECK; STEPHEN ELLISON; AND ERIN HOURIHAN,<br>   Plaintiffs, | No. 1:19-cv-00753-JAP-CG<br><br>**DEFENDANT CITY OF FARMINGTON'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO COMPEL DOCUMENT PRODUCTION FROM PLAINTIFFS** |

DEFENDANT CITY OF FARMINGTON'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO COMPEL DOCUMENT PRODUCTION FROM PLAINTIFFS

|   |   |
|---|---|
|   | ) |
|   | ) |
| v. | ) |
|   | ) |
| CITY OF FARMINGTON, NEW | ) |
| MEXICO, D/B/A FARMINGTON | ) |
| ELECTRIC UTILITY SYSTEM, | ) |
|     Defendant. | ) |

Pursuant to Rules 34 and 37 of the Federal Rules of Civil Procedure ("Fed R. Civ. Proc."), and Rules 7.1, 26.1, 26.6 and 37.1 of the U.S. District Court, District Court of New Mexico, Local Rules of Civil Procedure ("Local Rule(s)"), Farmington Electric Utility System ("FEUS" or "Defendant") hereby moves the Court for an order compelling Plaintiffs Vote Solar, Michael Eisenfeld, James Neidhart, Jeffrey Neidhart, Steven Bair, Neil Tribbett, Jerry Knutson, Vickie Slikkerveer, The Coliseum (d/b/a The Colosseum Gym), David Fosdeck, Stephen Ellison, and Erin Hourihan (collectively, "Plaintiffs" or "Vote Solar"), to produce documents responsive to Defendant's First Requests for Production of Documents (Exhibit A),[1] specifically to Request Nos. 2, 3 and 4.

Although the parties have been working diligently on resolving all discovery issues without Court intervention, today marks the deadline for filing a motion to compel, pursuant to Local Rule 26.6. Fact discovery is continuing, including but not limited to, depositions and additional requests for production.

---

[1] Defendant's Requests for Production and Plaintiffs' Objections and Responses are attached pursuant to Local Rule 37.1.

DEFENDANT CITY OF FARMINGTON'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO COMPEL DOCUMENT PRODUCTION FROM PLAINTIFFS

2

## BACKGROUND

This proceeding was initiated by Plaintiffs on August 16, 2019,[2] alleging, *inter alia*, that Defendant's Standby Service Riders for electric customers that receive service from FEUS are improper and violate the Public Utilities Regulatory Policies Act of 1978 ("PURPA").[3] Subsequent to initial pleadings and disclosures, the parties have been engaging in discovery.

Defendant submitted its First Set of Requests for Production of Documents to Plaintiffs on November 25, 2019 (*See* Exh. A). Defendant and Plaintiffs agreed to an extension of the 30-day deadline for submittal of objections, so that Plaintiffs could submit objections and responses by January 3, 2020. Defendant offered to provide until January 8, 2020 to complete document production. On January 3, 2020, Plaintiffs provided objections and responses to Defendant (*See* Exh. B) and documents responsive to Defendant's requests for production. On January 8, 2020, Plaintiffs provided to Defendant a privilege log and affirmed that they had no further documents to provide responsive to the Defendant's requests.

The documents in dispute are those withheld in Response to Requests Two, Three and Four, which are repeated below:

> **Request No. Two:**
> Provide all DOCUMENTS reflecting or associated with bids for SELF-GENERATING POWER FACILITIES received for YOUR residence/business, received up to the time of contracting for installation, including, but not limited to:
> a. DOCUMENTS reflecting installation, construction and development date(s), system description, design, size, equipment list, performance specifications (including capacity factor), and all costs; and

---

[2] Plaintiff's Complaint is listed in the Court's Docket on PACER as Document No. 1.
[3] Pub. L. 95-617, 92 Stat. 3117, 16 U.S.C. §§ 2601, *et seq.* (2020).

DEFENDANT CITY OF FARMINGTON'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO COMPEL DOCUMENT PRODUCTION FROM PLAINTIFFS

3

b. DOCUMENTS reflecting alternatives considered for installing the SELF-GENERATING POWER FACILITIES in question.

**Request No. Three:**
Provide any DOCUMENTS and COMMUNICATIONS reflecting the actual, final net costs of YOUR SELF-GENERATING POWER FACILITIES, including but not limited to, bills of sale, receipts or other proofs of purchase. Such DOCUMENTS and COMMUNICATIONS should include support for all costs and benefits associated with the planned and/or installed SELF-GENERATING POWER FACILITY in order to calculate the net costs to YOU, including, but not limited to, any subsidies, rebates, or tax credits associated with the SELF-GENERATING POWER FACILITY.

**Request No. Four:**
Provide all DOCUMENTS reflecting or including economic analyses conducted by or provided to YOU, regarding the expected savings of the installed SELF-GENERATING POWER FACILITY or otherwise associated with the operation of the SELF-GENERATING POWER FACILITY.

Plaintiffs responded on January 3, 2020 with the following objections and responses:

**Request No. Two:**

**Objection:** Plaintiffs object to this request on the grounds the requested documents are not relevant to any party's claim or defense, are not proportional to the needs of the case, and to the extent that Defendants already possess information submitted through applications by Plaintiffs, that the parties' relative access to the information and Defendants' superior resources outweigh the burden to Plaintiffs.

**Response:** Subject to and without waiving the above objections, Plaintiffs are providing documents with Bates range PL000001 through PL000092 related to Plaintiffs Eisenfeld, Hourihan, Fosdeck and Ellison reflecting installation, construction and development date(s), system description, design, size, equipment list, performance specifications (including capacity factor), and all costs. Requested documents reflecting alternatives considered for installing self-generating power facilities in question 2(b) do not exist.

DEFENDANT CITY OF FARMINGTON'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO COMPEL DOCUMENT PRODUCTION FROM PLAINTIFFS

4

**Request No. Three:**

**Objections:** Plaintiffs object to this request as (1) vague and ambiguous as to the meaning of "net costs," "costs and benefits associated with the planned and/or installed" equipment, "net costs to YOU," and "subsidies, rebates, or tax credits associated with" equipment; and (2) as not relevant to any claim or defense in this case and, therefore, not within the scope of discovery.

**Response:** Subject to and without waiving the objections above, Plaintiffs are producing documents with Bates range PL000093 through PL000113 related to Plaintiffs Eisenfeld, Hourihan, Fosdeck, and Ellison.

**Request No. Four:**

**Objections:** Plaintiffs object to this request as (1) vague and ambiguous as to the meaning of "economic analyses" and "expected savings"; and (2) as not relevant to any claim or defense in this case and, therefore, not within the scope of discovery.

**Response:** Subject to and without waiving any objections, documents produced in response to requests 2(a) and 3, above, may be responsive to this request. In addition, Plaintiffs are producing documents with Bates range PL000114 through PL000116 in response to this request.

Plaintiffs state that they respond to the requests as they may pertain to Mr. Eisenfeld, Ms. Hourihan, Mr. Fosdeck and Mr. Ellison. These four Plaintiffs are subject to Defendant's Partial Motion to Dismiss under Rule 12(b)(1), filed with the Court on September 11, 2019 ("Partial Motion to Dismiss")[4]. In its Partial Motion to Dismiss, FEUS alleged that these four Plaintiffs lack standing to pursue the Complaint,[5] as such Plaintiffs, *inter alia*, have not installed self-generating electric facilities on their property nor received service subject to FEUS's Standby

---

[4] *See* Doc. 11 on Court Docket Sheet.
[5] Defendant also moved to dismiss Vote Solar for lack of standing under 12(b)(1) on different bases. Defendant's Partial Motion to Dismiss remains pending before this Court.

DEFENDANT CITY OF FARMINGTON'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO COMPEL DOCUMENT PRODUCTION FROM PLAINTIFFS

5

Service Rider. Plaintiffs submitted objections to Requests Two, Three, and Four on the basis that the requests are not relevant to any claim or defense in this case and, therefore, not within the scope of discovery. Plaintiffs also objected on the basis of the purported vagueness of certain terms in the Requests as to Defendants other than those four persons[6], but nevertheless submitted responsive documents as to the four Plaintiffs subject to the Motion to Dismiss, Mr. Eisenfeld, Ms. Hourihan, Mr. Fosdeck and Mr. Ellison.

Defendants seek an order from the Court compelling the production of documents by Plaintiffs to Request Nos. Two and Three. In discussions with Plaintiffs, Defendants subsequently clarified that Plaintiffs had not analyzed Request No. Four as to Plaintiffs other than Mr. Eisenfeld, Ms. Hourihan, Mr. Fosdeck and Mr. Ellison. Plaintiffs had identified no responsive documents as to the four, noted Plaintiffs. Accordingly, with respect to Request No. Four, Defendant itself clarifies that it seeks an order compelling Plaintiffs to search for documents responsive to such Request as to the remaining, six, individual Plaintiffs and to provide any documents identified or respond that no such documents exist.

## CERTIFICATION OF GOOD FAITH EFFORTS TO CONFER

Defendants certify that they made a good faith attempt to confer with Plaintiffs pursuant to Local Rule 37.1. On December 9, 2019, prior to the service of objections and responses, on a telephone conference, Plaintiffs' counsel conferred with Defendants' counsel to clarify certain of Defendant's requests for production, at which Plaintiffs' counsel indicated that they would likely

---

[6] Defendant also does not expect the Requests to apply to Plaintiff Vote Solar, which is an organization that has not installed self-generating facilities in FEUS's service territory, unless Vote Solar has been given custody or control of the documents requested, rather than individual Plaintiffs, in which case, Defendant expects Vote Solar to respond.

DEFENDANT CITY OF FARMINGTON'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO COMPEL DOCUMENT PRODUCTION FROM PLAINTIFFS

6

make objections along the lines outlined above. On January 17, 2020, on a telephone conference, Defendants conferred with Plaintiffs' counsel seeking responses to its requests described above. On January 23, 2020, Defendant's counsel reached Plaintiff's counsel via telephone in a further attempt to resolve differences. However, the Plaintiffs and Defendants maintain a fundamental difference of opinion as to whether the subject requests ask for properly discoverable evidence. For these reasons, Defendant also represents that it has determined that this Motion is opposed under Local Rule 7.1(a).

## ARGUMENT

A party is obligated to produce all documents that are: (i) in a party's possession, custody or control and (ii) relevant to any party's claims or defenses, so long as it is "reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. Rule 26(b)(1). Fed. R. Civ. P. 37 permits a party to move for an order compelling disclosure of information or responses to discovery requests. F. R. Civ. P. 37(a)(4) states, "[A]n evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." This Court has stated, "The scope of discovery is deliberately broad: 'The way is now clear, consistent with recognized privileges, for the parties to obtain the fullest possible knowledge of the issues and facts before trial.'"[7] Further, the "party opposing discovery has the burden of proving the lack of relevance."[8]

---

[7] *See Martinez v. Cornell Corrections of Texas*, 229 F.R.D. 215, 218 (D.N.M 2005) (quoting *Hickman v. Taylor*, 329 U.S. 495, 501, 67 S.Ct. 385, 91 L.Ed. 451 (1947)).
[8] *See Sandoval v. Post*, 2008 WL 11399521 at 1 (D.N.M. 2008) (citing *Flora v. Hamilton*, 81 F.R.D. 576, 578 (M.D.N.C. 1978)).

DEFENDANT CITY OF FARMINGTON'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO COMPEL DOCUMENT PRODUCTION FROM PLAINTIFFS

7

Defendant's requests are relevant to the case and are "reasonably calculated to lead to the discovery of admissible evidence." As explained below, Defendant has an obligation to ensure that its rates are just and reasonable. Further, Defendant may have to respond to claims for damages for which such information is directly relevant. Plaintiffs pursue their case under the Public Utilities Regulatory Policies Act of 1978.[9] Under PURPA, utilities subject to the statute, such as FEUS, must provide rates for sales to PURPA facilities under certain standards, including ensuring that such rates are "just, reasonable and in the public interest."[10] In addition, FEUS must ensure that its rates do "not discriminate against any qualifying facility in comparison to rates for sales to other customers served by the electric utility."[11] FEUS requires the information requested to make its defense that it meets such standards.

FEUS must demonstrate that its rates for sales to customers with on-site self-generating facilities are just and reasonable. FEUS sought to design its rates based on cost causation principles, such that the rates would not subsidize PURPA facilities, nor would they require the subsidization by customers that do not own generation subject to PURPA. FEUS sought to ensure customers pay a portion of their fixed costs and pay comparable rates through minimization of inter and intra class subsidization. Accordingly, FEUS designed its rates carefully to recover its fixed costs for infrastructure, wires, and other overhead, while at the same time allocating to the relevant customer classes. The information on bids, costs, and economic analyses sought by FEUS would help show that FEUS is meeting its mandate to its customers.

---

[9] Pub. L. 95-617, 92 Stat. 3117.
[10] 18 C.F.R. § 292.305(a)(1)(i); *see* Request for Judicial Notice ("RJN") filed contemporaneously with this filing at Exh. A.
[11] *See* 18 C.F.R. § 292.305(a)(1)(ii); *see* RJN Exh. A.

DEFENDANT CITY OF FARMINGTON'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO COMPEL DOCUMENT PRODUCTION FROM PLAINTIFFS

8

Information regarding installation, construction and development date(s), system description, design, size, equipment list, performance specifications (including capacity factor), help FEUS understand the size, quality, and types of systems sought by customers, that would factor into FEUS's expected system needs, as well as impact to its non-self-generating customers. In addition, installing systems that exceed the service needs of on-site load could impact the rates of FEUS. Accordingly, information on generator size and performance is necessary.

Second, FEUS designs its rates to be fair to customers who install distributed generation facilities, such as solar, to ensure that FEUS's rate design does not jeopardize reasonable payback periods. To be sure, as part of the transition to the Standby Service Riders, FEUS will demonstrate that it chose to grandfather existing Net Metered solar customers in recognition of their potential reliance on the rate structure in effect that the time of the customer's solar investments. The bids, costs, and economic analysis information would help FEUS demonstrate that its rate design did not jeopardize reasonable payback periods for such facilities, and otherwise its rates would not be discriminatory to such customers. Likewise, system specifications, such as size, system description, performance specifications such as capacity factor, can help FEUS demonstrate that its rates would help meet customers' expectations of a reasonable payback period and therefore would not be discriminatory toward them. In fact, this is precisely why FEUS strongly encourages its customers to come in-person to discuss any planned generation installation—to ensure expectations are reasonably set through careful explanation of the associated change in anticipated rates and to address any concerns/questions upfront prior to investments.

DEFENDANT CITY OF FARMINGTON'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO COMPEL DOCUMENT PRODUCTION FROM PLAINTIFFS

9

Plaintiffs would argue that it is the utility's costs that are at issue and that customer's costs are irrelevant. Plaintiffs take a very narrow view of the ratemaking flexibility permitted by PURPA, and accordingly, their theory of the statute and the latitude allowed to utilities drives their interpretation of potentially relevant evidence. Unlike the determination of the price utilities must pay to purchase power from qualifying facilities under PURPA, which results in rates solely based on a utility's avoided costs,[12] the calculation of the rates charged for sale of electricity and service to FEUS's customers—both full supply and partial requirements customers with their own generation—take into account a variety of factors that are prioritized and considered pursuant to the nonregulated electric utility's ratemaking authority. For example, the Federal Energy Regulatory Commission's ("FERC" or "Commission") PURPA regulations leave the responsibility to nonregulated electric utilities, including FEUS, to establish rates for the sale of Supplementary power, Back-up power, Maintenance power, and Interruptible power service to cogenerators and small power producers.[13] FERC has further stated that its PURPA "regulations allow the States and nonregulated utilities a wide degree of latitude in establishing an implementation plan. Such latitude is necessary in order for implementation to accommodate local conditions and concerns, so long as the final plan is consistent with statutory requirements."[14] The Commission further recognized a variety of local conditions, including the

---

[12] *See* 18 C.F.R. § 292.304(a)(ii)(2); *see* RJN Exh. B.
[13] *See* 18 C.F.R. § 292.305(b); *see* RJN Exh. A.
[14] *Policy Statement Regarding the Commission's Enf't Role Under Section 210 of the Pub. Util. Regulatory Policies Act of 1978*, 23 FERC ¶ 61,304, 61,646 (1983); *see* RJN Exh. C.

DEFENDANT CITY OF FARMINGTON'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO COMPEL DOCUMENT PRODUCTION FROM PLAINTIFFS

10

fact that economic and regulatory circumstances will vary by utility, which further supports deferring to the manner of implementation chosen by nonregulated electric utilities.[15]

Thus, among other things, Defendant needs to understand the customer's costs in designing its rates to ensure that its treatment of customers with self-generating facilities, as compared to its customers without self-generating facilities, result in just and reasonable rates and are not disincentivized.  While PURPA has existed since 1978, the proliferation of rooftop solar is a relatively recent phenomenon, where a customer is in the novel situation of incurring its own costs to provide electricity to itself.  Prior to the introduction of wide-scale, distributed solar generation, on-site generation to serve load was limited, for example, installed on a light industrial site of a company that sought to be innovative in its choice of its power supply option.  Such limited installations would not have a significant impact on utility-wide rates.  Now, distributed solar generation is available and being installed to a broad range of residential and commercial customers.  Utilities have not had to address the breadth of such installations in the equation of designing its rates until recently.  Accordingly, requesting cost, bid, and economic data is vital to defending the impact of rates that account for such distributed generation.  Indeed, FERC recently has recognized the trends on reliance in PURPA in a Notice of Proposed Rulemaking ("NOPR") that it issued in 2019 intended to adopt reforms to PURPA.  In that NOPR, FERC observed, *inter alia*, the decreased cost of renewable resources, and increased proportion of renewable generation due in part to availability of electricity markets and due in

---

[15] *Small Power Prod. And Cogeneration Facilities – Rates and Exemptions,* Final Rule Regarding the Implementation of Section 210 of the Public Utility Regulatory Policies Act of 1978, 10 FERC ¶ 61,150, Order No. 69 at 93-94 (Feb. 19, 1980); *see* RJN Exh. D.

DEFENDANT CITY OF FARMINGTON'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO COMPEL DOCUMENT PRODUCTION FROM PLAINTIFFS

11

part to state renewable mandates, as signs that the proliferation of renewables and improved technology has resulted in significant costs to the electric utilities that must be reconsidered to ensure fairness to all ratepayers.[16]

     Another factor should be mentioned.  All of the Plaintiffs in this proceeding, excepting organization Vote Solar, remain customers of FEUS, albeit they are or hope to be partial requirements customers.  FEUS must ensure that its rate design is non-discriminatory toward its partial requirements customers who have installed self-generating facilities such as solar, including Plaintiffs, as much as it must protect its customers who have not installed such on-site generation.  FEUS will show that it designed Standby Service Riders in consideration of the utility's existing metering capabilities, the incremental cost of adding a second meter at each partial requirement customer's premise and updating the associated software infrastructure at FEUS to be able to process the data from a second meter, and the predictability of the customer load given the self-generation technology employed.  In this regard, the size, installed technology, and specifications of a customer's generator are important considerations with respect to providing standby service to the customer in case their self-generating facility is insufficient to serve their own load needs. To firm up partial requirements customers' loads, FEUS must hold in reserve sufficient generation, transmission and distribution capacity and recover the cost of that capacity held in reserve for the benefit of these partial requirements customers on the basis of installed capacity.

---

[16] *See Qualifying Facility Rates and Requirements Implementation Issues Under the Public Utility Regulatory Policies Act of 1978*; 168 FERC ¶ 61,184 at PP 20-22 (2019); *see* RJN Exh. E.

DEFENDANT CITY OF FARMINGTON'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO COMPEL DOCUMENT PRODUCTION FROM PLAINTIFFS

Defendant notes that Plaintiffs have not objected that the request imposes an unreasonable burden, except insofar (pertaining to Request No. Two) as Defendant has reasonable access to information provided by Plaintiffs.  For example, FEUS would have reasonable access to applications to install on-site generation that have been submitted by Plaintiffs.  Regarding such documents to which FEUS would already have access, FEUS agrees and does not require that Plaintiffs produce such information.  However, as to the documents to which FEUS does not have access, FEUS is within its rights to request such material in discovery.

Defendant has raised several affirmative defenses in its September 10, 2019 Answer.[17]  Germane to the discussion above, Defendant has asserted that Plaintiffs have failed to state a claim (First Affirmative Defense) by alleging a discriminatory rate when Defendant has done the opposite.  In addition, several of Defendant's Affirmative Defenses, Seventh (Consent), Eighth (Acts or Omissions by Plaintiff), Ninth (Waiver), Tenth (Estoppel), Twelfth (Assumption of the Risk), are partially dependent upon demonstrating that Plaintiffs willingly contracted for solar installations, knowing or should have knowing that the anticipated benefit received could be less than expected.  If Plaintiffs' view of what constitutes a just and reasonable rate under 18 C.F.R. § 292.305(a)(1)(i) is defined by how quickly they recover their costs of installing the facilities, then information as to what Plaintiffs consented to is relevant to Defendant's defense that Plaintiffs assumed the risk that the rates do not meet Plaintiffs' expectations.

---

[17] *See* Doc. 10 on Court Docket Sheet.

DEFENDANT CITY OF FARMINGTON'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO COMPEL DOCUMENT PRODUCTION FROM PLAINTIFFS

13

Lastly, Plaintiffs have asserted disgorgement as a remedy.[18] While the remedy requested could be interpreted to constitute simply the dollars attributed to the Riders, it is unclear if Plaintiffs will advance a methodology to compute disgorgement, or if only partial disgorgement is ordered, how will the amounts directed by the Court be calculated. Plaintiffs' costs, bids and economic information are relevant to Defendant's preparation of a defense as to any financial compensation directed by the Court. If the methodology for disgorgement is based on the degree of "harm" to the Plaintiffs, cost, bid and economic information can be relevant.

## CONCLUSION

For the reasons set forth above, Defendants respectfully request that the Court compel the Plaintiffs to produce all materials responsive to Defendant's First Requests for Production of Documents, specifically all documents requested in response to Defendant's Request Nos. Two, Three, and Four, without delay.

Dated this 24th day of January, 2020.

Respectfully submitted,

By: /s/ Sean M. Neal

SEAN M. NEAL
(*pro hac vice*)
Duncan, Weinberg, Genzer & Pembroke, P.C.
915 L Street
Suite 1410
Sacramento, CA  95814
Telephone:  916-498-0121
Facsimile:  916-498-9975
smn@dwgp.com

---

[18] *See* Plaintiffs' Complaint at 15, Para. D, requesting that the Court "Order Defendant to disgorge all money collected pursuant to the unlawful Standby Service Riders and return such funds to the customers from whom they were collected."

DEFENDANT CITY OF FARMINGTON'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO COMPEL DOCUMENT PRODUCTION FROM PLAINTIFFS

14

| | |
|---|---|
| JENNIFER BREAKELL<br>City Attorney for the<br>   City of Farmington, New Mexico<br>800 Municipal Drive<br>Farmington, NM 87401<br>Telephone:  505-599-1122<br>Facsimile:  505-599-1119<br>jbreakell@fmtn.org | LISA S. GAST<br>(*pro hac vice*)<br>KRISTEN CONNOLLY McCULLOUGH<br>(*pro hac vice*)<br>Duncan, Weinberg, Genzer & Pembroke, P.C.<br>1667 K Street, NW<br>Suite 700<br>Washington, DC  20006<br>Telephone: 202-467-6370<br>Facsimile: 202-467-6379<br>lsg@dwgp.com<br>kc@dwgp.com |

DEFENDANT CITY OF FARMINGTON'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO COMPEL DOCUMENT PRODUCTION FROM PLAINTIFFS

15

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 24th day of January, 2020, the foregoing *Defendant City of Farmington's Memorandum of Points and Authorities in Support of Motion to Compel Document Production from Plaintiffs* was electronically filed with the Clerk of Court using the CM/ECF system that will send notification of such filing to all counsel of record.

By: */s/ Sean M. Neal*

SEAN M. NEAL
(*pro hac vice*)
Duncan, Weinberg, Genzer & Pembroke, P.C.
915 L Street
Suite 1410
Sacramento, CA  95814
Telephone:  916-498-0121
Facsimile:  916-498-9975
smn@dwgp.com

DEFENDANT CITY OF FARMINGTON'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO COMPEL DOCUMENT PRODUCTION FROM PLAINTIFFS

16