## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

VOTE SOLAR, et al.,

    Plaintiffs,

    vs.                                     Civ. No. 19-753 JAP/CG

CITY OF FARMINGTON,
d/b/a FARMINGTON ELECTRIC
UTILITY SYSTEM,

    Defendant.

## MEMORANDUM OPINION AND ORDER

On August 16, 2019, Plaintiffs Vote Solar and individual solar users in Farmington, New Mexico ("Plaintiffs") sued Defendant City of Farmington under the Public Utility Regulatory Policies Act of 1978 ("PURPA"), 16 U.S.C § 824a–3(h)(2)(B). *See* COMPLAINT FOR DECLARATORY AND EQUITABLE RELIEF (Doc. No. 1) ("Complaint"). On September 11, 2019, Defendant moved to dismiss under Federal Rule of Civil Procedure ("Rule") 12(b)(1) for lack of subject matter jurisdiction on the basis that several Plaintiffs lack standing to bring this lawsuit. *See* DEFENDANT CITY OF FARMINGTON'S NOTICE OF PARTIAL MOTION AND PARTIAL MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION ("Motion") (Doc. No. 11); *see also* Doc. 11-1 at 3.

On October 30, 2019, at the Court's request, the parties submitted supplemental briefing regarding the type of PURPA claim at issue in this case—specifically, whether Plaintiffs have properly brought a claim under Section 210(h) of PURPA,[1] as they explicitly assert in their

---

[1] Section 210(h) of PURPA is codified at 16 U.S.C. § 824a–3(h). Unless otherwise specified, the Court refers to 16 U.S.C. § 824a–3(h)(2) as Section 210(h) because only that subsection is in dispute.

complaint, or a claim under Section 210(g) of PURPA,[2] as Defendant has suggested. After careful consideration of the parties' submissions, the Court concludes that Plaintiffs do not allege sufficient facts to constitute a claim under Section 210(h). Instead, the Court construes the Complaint as a claim under Section 210(g). Consequently, the Court lacks subject matter jurisdiction over this case in its entirety. The Court acknowledges that this is a more drastic outcome than either party likely anticipated. The Court therefore believes that Plaintiffs should have the opportunity to either refile the Complaint to allege facts consistent with the Court's interpretation of PURPA Section 210(h) as outlined in this opinion, or to file their claims as presented in New Mexico state court. The Court will grant Defendant's Motion and dismiss this case without prejudice.

### Factual and Procedural Background

Plaintiff Vote Solar is a California-based "non-profit organization whose mission is to make solar a mainstream energy resource across the United States." Compl. at ¶ 7. Individual Plaintiffs Michael Eisenfeld, James Neidhart, Jeffrey Neidhart, Steven Bair, Neil Tribbett, Jerry Knutson, Vickie Slikkerveer, The Coliseum, Inc. (d/b/a The Colosseum Gym), David Fosdeck, Stephen Ellison, and Erin Hourihan are all Farmington residential electric customers of Defendant with current or anticipated solar generation capacity. *Id*. at ¶¶ 8–18. The individual Plaintiffs are also members of Vote Solar. *Id*. at ¶ 7.

Defendant owns and operates a municipal utility provider, Farmington Electric Utility System, in northern New Mexico. Compl. at ¶¶ 18–19. The Farmington City Council determines the prices and terms of electric service for the utility. *Id*. at ¶ 19. On January 24, 2017, the Farmington City Council passed Resolution No. 2017-1616, a set of "Standby Service Riders"

---

[2] Section 210(g) is codified at 16 U.S.C. § 824a–3(g). Unless otherwise specified, the Court refers to 16 U.S.C. § 824a–3(g)(1) as Section 210(g) because only that subsection is in dispute.

for residential, small, medium, and large service generators. *Id.* at ¶¶ 20–21. The Standby Service Riders went into effect March 1, 2017. *Id.* at ¶ 20.

On August 16, 2019, Plaintiffs commenced this lawsuit, raising four primary allegations against Defendant.[3] Specifically, Plaintiffs allege: (1) that the Standby Service Riders "impose higher and additional charges for customers who self-supply some of their electricity needs with their own solar generation[;]" (2) "Defendant lacks the requisite data showing a difference in loads and costs by solar compared to non-solar customers[;]" (3) "Defendant [] failed to base the level of charges in the Standby Service Riders on accurate data and consistent systemwide costing principles[;]" and (4) "Defendant's Standby Service Riders contain unreasonable and discriminatory charges." *Id.* at ¶¶ 38–41. Plaintiffs claim that the Standby Service Riders violate FERC's rate-setting rules set forth in 18 C.F.R. § 292.305(a).[4] *See id.* at ¶ 42. Plaintiffs argue that because the Standby Service Riders effectively discriminate against solar users, Defendant fails to properly implement FERC's requirements. *Id.* at ¶ 43. Plaintiffs request that the Court "enjoin Defendant's imposition and collection of charges under the Standby Service Riders[,]" order Defendant's compliance with PURPA in rate-setting, disgorge and return profits made from the Standby Service Riders, and order payment of Plaintiffs' attorney's fees. *Id.* at ¶ 43.

On September 11, 2019, Defendant filed its Motion, asserting primarily that Plaintiff Vote Solar lacks statutory standing to challenge the Standby Service Riders under PURPA, and

---

[3] Prior to commencing this lawsuit, Plaintiffs petitioned the Federal Energy Regulatory Commission ("FERC") to initiate a PURPA enforcement action against Defendant. *See* Compl. Ex. A ("Petition For Enforcement Under The Public Utility Regulatory Policies Act Of 1978"). On June 18, 2019, FERC issued a Notice of Intent Not to Act, declining to initiate an enforcement action. Compl. at ¶ 5.

[4] 18 C.F.R. § 292.305(a) states that rates for sales:

     (i) Shall be just and reasonable and in the public interest; and
     (ii) Shall not discriminate against any qualifying facility in comparison to rates for sales to other customers served by the electric utility.

Rates for sales which are "based on accurate data and consistent systemwide costing principles do not discriminate against any qualifying facility to the extent that such rates apply to the utility's other customers with similar load or other cost-related characteristics." *Id.*

3

lacks associational standing to bring this lawsuit on behalf of its members. *See* Mot. at 3–8. Defendant also argues that individual Plaintiffs Erin Hourihan, Michael Eisenfeld, David Fosdeck, and Stephen Ellison lack the requisite injury-in-fact to have Article III standing. *See* Mot. at 7–8. In response, Plaintiffs argue that Vote Solar has associational standing on behalf of its members, and that the individual Plaintiffs named in the Motion will suffer imminent harm under the Standby Service Riders. *See* PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S PARTIAL MOTION TO DISMISS (Doc. No. 20). In reply, Defendant counters that associational standing does not apply when a plaintiff seeks damages and that Vote Solar lacks standing to bring an implementation challenge under Section 210(h) of PURPA. *See* DEFENDANT CITY OF FARMINGTON'S REPLY TO VOTE SOLAR'S RESPONSE AND IN SUPPORT OF PARTIAL MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION (Doc. No. 21).

Defendant's reply also suggests that Plaintiffs may be asserting an "as-applied" challenge under PURPA in the guise of an "implementation" claim. *See* Doc. No. 21 at 3–4 (arguing that Vote Solar "improperly attempts to bring an enforcement action against [Defendant] under PURPA, 16 U.S.C. § 824a-3(h)(2)(B), for allegedly implementing discriminatory rates . . . [on] solar customers" and that federal district courts do not have jurisdiction over as-applied PURPA claims that concern "a specific rate plan as it is applied to a customer or class of customers.") Because no party squarely addressed this jurisdictional issue, which could be dispositive of the entire case, the Court requested supplemental briefing on October 25, 2019. In a letter to counsel, the Court asked the parties "to submit additional briefing on the issue of statutory subject matter jurisdiction." Specifically, the Court directed the parties to "address whether Plaintiffs' claim is an 'implementation challenge' under 16 U.S.C. § 824a-3(h)(2)(B) or an 'as-applied' challenge

under 16 U.S.C. § 824a-3(g)." The Court gave the parties until October 30, 2019, to submit the briefing.

In their supplemental brief, Plaintiffs argue that the Complaint is an "implementation" challenge under 16 U.S.C. § 824a-3(h), over which federal courts may exercise jurisdiction. *See* PLAINTIFFS' SUPPLEMENTAL BRIEFING ("Pls. Supp. Br.") (Doc. No. 31) at 2. Plaintiffs assert that because they "challenge the practice of applying the tariffs, generally, not the specific application to any individual petitioner[,]" as described in *Exelon Wind 1, L.L.C. v. Nelson*, 766 F.3d 380, 388 (5th Cir. 2014) ("*Exelon II*"), this case belongs in federal court, not state court. *Id.* at 5.[5] Defendant responds that, although it has so far "accepted the Complaint's assertion that it is raising an implementation challenge against it at face value[,]" the Plaintiffs' arguments "share characteristics with 'as-applied' challenges under PURPA . . . [and therefore] Plaintiffs' Complaint is attempting to assert an 'as-applied' challenge that ought not to be brought in District Court." DEFENDANT CITY OF FARMINGTON'S ADDITIONAL BRIEFING IN SUPPORT OF DEFENDANT'S PARTIAL MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION ("Def. Supp. Br.") (Doc. No. 32) at 3.

**Standard of Review**

Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction generally take the form of either facial or factual attacks. *See Holt v. United States*, 46 F.3d 1000, 1002–03 (10th Cir. 1995). Facial attacks question "the sufficiency of the complaint[,]" and a district court reviewing facial attacks must accept the allegations in the complaint as true. *Id.* (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990)). Factual attacks "go

---

[5] Plaintiffs also filed PLAINTIFFS' [PROPOSED] RESPONSE TO DEFENDANT'S ADDITIONAL BRIEFING (Doc. No. 35-1) with PLAINTIFFS' MOTION FOR LEAVE TO FILE SUPPLEMENTAL BRIEFING (Doc. No. 35). Because the Court granted the Motion for Leave, *see* ORDER (Doc. No. 39), the Court has also considered the arguments made therein.

beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends." *Holt*, 46 F.3d at 1003. "When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations." *Id*. Defendant does not challenge any underlying facts supporting jurisdiction, so the Court will construe the Motion as a facial challenge.

District courts are "required to convert a Rule 12(b)(1) motion to dismiss into a Rule 12(b)(6) motion or a Rule 56 summary judgment motion when resolution of the jurisdictional question is intertwined with the merits of the case." *Id*. "When subject matter jurisdiction is dependent upon the same statute which provides the substantive claim in the case, [a court considers] the jurisdictional claim and the merits . . . to be intertwined." *Wheeler v. Hurdman*, 825 F.2d 257, 259 (10th Cir. 1987) (citing *Clark v. Tarrant County*, 798 F.2d 736, 742 (5th Cir. 1986)). Conversion to summary judgment is appropriate when parties submit, and a court considers, additional evidence beyond the pleadings such as affidavits. *See Wheeler*, 825 F.2d at 259. In this case, whether there is subject matter jurisdiction turns on an analysis of the same statutory provisions in PURPA that form the basis of Plaintiffs' claim. Because the merits of the Complaint and the jurisdictional issue are intertwined, the Court will convert the present Motion under Rule 12(b)(1) to a 12(b)(6) motion to dismiss for failure to state a claim.[6]

A Rule 12(b)(6) motion "tests the sufficiency of the allegations within the four corners of the complaint[.]" *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). When considering a Rule 12(b)(6) motion, the court must accept as true all well-pleaded factual allegations in the complaint, view those allegations in the light most favorable to the non-moving party, and draw

---

[6] Conversion to summary judgment here is not necessary because although the Court has taken judicial notice of prior FERC administrative proceedings, the Court may do so without converting the motion to dismiss into a motion for summary judgment. *See Tal v. Hogan*, 453 F.3d 1244, 1265 n. 24 (10th Cir. 2006) (citing *Grynberg v. Koch Gateway Pipeline Co.*, 390 F.3d 1276, 1278 n. 1 (10th Cir. 2004) (noting that a court may consider facts subject to judicial notice without converting a motion to dismiss into a motion for summary judgment)).

all reasonable inferences in the plaintiff's favor. *See Smith v. United States,* 561 F.3d 1090, 1098 (10th Cir. 2009). The allegations must "state a claim to relief that is plausible on its face." *Id.* Courts should dismiss when, from the face of the complaint, it "appears that the plaintiff can prove no set of facts in support of the claims that would entitle the plaintiff to relief." *Soc'y of Separationists v. Pleasant Grove City*, 416 F.3d 1239, 1241 (10th Cir. 2005) (quotation marks omitted).

To be clear, Defendant's Motion relies heavily on the standing of some, but not all, of Plaintiffs to argue dismissal, and only secondarily raises the jurisdictional issue. *See* Mot. at 3. Most of Plaintiffs' briefing focuses on the standing issues as well. The Court, however, will defer addressing the standing arguments because it has "an independent obligation to determine whether subject matter jurisdiction exists" over the case. *1mage Software, Inc. v. Reynolds & Reynolds Co.*, 459 F.3d 1044, 1048 (10th Cir. 2006) (quoting *Arbaugh v. Y & H Corp.*, 546 U.S. 500 (2006)). Despite Defendant's initial acceptance of Plaintiffs' characterization of the claims as implementation challenges, *see* Def. Supp. Br. at 3, the Court will not treat this characterization of the claims as a fact. For the purposes of a motion to dismiss the Court must take all the factual allegations in the complaint as true, but the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

Though complete dismissal was not, until the supplemental briefing stage, the relief sought by Defendant, the Court may reexamine jurisdiction *sua sponte* or upon party suggestion. *See 1mage Software, Inc.*, 459 F.3d at 1048. The Court will fulfill its obligation to confirm its jurisdiction by determining whether PURPA's jurisdictional provisions preclude the Court from granting the relief sought.

**Statutory Background**

Deciphering the language of PURPA's jurisdictional provisions requires an understanding of the context of the law and the complementary provisions of the Federal Power Act ("FPA"), 16 U.S.C. § 791 *et seq.* Fortunately, the United States Supreme Court and the United States Court of Appeals for the District of Columbia Circuit have done some of the heavy lifting in this respect. *See New York, et al. v. F.E.R.C.*, 535 U.S. 1, 6 (2002); *Portland Gen. Elec. Co. v. F.E.R.C.*, 854 F.3d 692, 697 (D.C. Cir. 2017). Before Congress enacted the FPA in 1935, local generators provided electricity service with limited, primarily intrastate service ranges. *See New York*, 535 U.S. at 5. With the FPA,

> Congress authorized federal regulation of electricity in areas beyond the reach of state power [interstate sales of electricity], but it also extended federal coverage to some areas that previously had been state regulated . . . . The FPA charged the Federal Power Commission (FPC), the predecessor of FERC, "to provide effective federal regulation of the expanding business of transmitting and selling electric power in interstate commerce." *Gulf States Util. Co. v. FPC,* 411 U.S. 747, 758 (1973). Specifically, in § 201(b) of the FPA, Congress recognized the FPC's jurisdiction as including "the transmission of electric energy in interstate commerce" and "the sale of electric energy at wholesale in interstate commerce." 16 U.S.C. § 824(b). Furthermore, § 205 of the FPA prohibited, among other things, unreasonable rates and undue discrimination "with respect to any transmission or sale subject to the jurisdiction of the Commission," 16 U.S.C. §§ 824d(a)-(b), and § 206 gave the FPC the power to correct such unlawful practices, 16 U.S.C. § 824e(a).

*Id.* at 6–7. Since 1935, "the number of electricity suppliers has increased dramatically and [t]echnological advances have made it possible to generate electricity efficiently in different ways and in smaller plants." *Id.* at 7. Massive interconnected power grids have replaced the small, local power networks. *Id.* One of Congress' first attempts to "address[] these evolving conditions in the electricity market" was PURPA, which aimed "to promote the development of new generating facilities and to conserve the use of fossil fuels." *Id.* at 9. "Because the traditional utilities controlled the transmission lines and were reluctant to purchase power from

'nontraditional facilities,' PURPA directed FERC to promulgate rules requiring utilities to purchase electricity from 'qualifying cogeneration and small power production facilities.'" *Id.* (quoting *F.E.R.C. v. Mississippi,* 456 U.S. 742, 751 (1982)).

PURPA Section 210 guides the relationship between state public utilities commissions ("PUC"), nonregulated local utilities, such as Defendant, and small, independent power producers such as the individual Plaintiffs in this case. *See* 16 U.S.C. § 824a–3. Section 210:

> [S]eeks to encourage the development of cogeneration and small power production facilities. Congress believed that increased use of these sources of energy would reduce the demand for traditional fossil fuels. But it also felt that two problems impeded the development of nontraditional generating facilities: (1) traditional electricity utilities were reluctant to purchase power from, and to sell power to, the nontraditional facilities, and (2) the regulation of these alternative energy sources by state and federal utility authorities imposed financial burdens upon the nontraditional facilities and thus discouraged their development.
>
> In order to overcome the first of these perceived problems, § 210(a) [16 U.S.C. § 824a–3(a)] directs FERC, in consultation with state regulatory authorities, to promulgate "such rules as it determines necessary to encourage cogeneration and small power production," including rules requiring utilities to offer to sell electricity to, and purchase electricity from, qualifying cogeneration and small power production facilities. Section 210(f), 16 U.S.C. § 824a–3(f), requires each state regulatory authority and nonregulated utility to implement FERC's rules.

*Mississippi*, 456 U.S. at 750–51 (footnotes omitted). Specifically, Section 210(f) requires that nonregulated electric utilities,[7] after notice and opportunity for public hearing, implement any rule prescribed by FERC within one year. *See* 16 U.S.C. § 824a–3(f)(2).

Recognizing the balance between the traditional state regulation of utilities and federal interstate oversight, Congress utilizes "[s]tate-based adjudication . . . as the mainstay for enforcing PURPA rights." *Portland Gen. Elec. Co.*, 854 F.3d at 698. Section 210(g) provides for state court jurisdiction "respecting any proceeding conducted by a State regulatory authority or

---

[7] A nonregulated electric utility is any electric utility other than a state-regulated electric utility. *See* 16 U.S.C. § 2602(9). Defendant is a nonregulated electric utility because it "adopts its own policies and rates without oversight from a state regulatory authority, such as the New Mexico Public Regulation Commission." Compl. at ¶ 18.

nonregulated electric utility for purposes of implementing any requirement of a [FERC] rule . . . ." 16 U.S.C. § 824a–3(g). Section 210(h) authorizes FERC to enforce Section 210(f)'s rule implementation requirement. *See id.* at § 824a–3(h). FERC "may enforce the requirements of [Section 210(f)] against any State regulatory authority or nonregulated electric utility[,]" or, if FERC declines to do so after a party petitions for FERC enforcement, "[a]ny electric utility, qualifying cogenerator, or qualifying small power producer[8] . . . may bring an action in the appropriate United States district court to require such State regulatory authority or nonregulated electric utility to comply with [Section 210(f)]." *Id.* With respect to subject matter jurisdiction, the Court must determine whether Plaintiffs' claims fall under Section 210(g) or Section 210(h).

## Analysis

The supplemental briefing focuses on PURPA Section 210 and discusses jurisdiction in terms of "implementation" challenges under Section 210(h) versus "application" challenges under Section 210(g). The implementation-versus-application approach finds its roots in two cases: *Greensboro Lumber Co. v. Georgia Power Co.*, 643 F. Supp. 1345, 1374 (N.D. Ga. 1986), *aff'd*, 844 F.2d 1538 (11th Cir. 1988) and *Mass. Inst. of Tech. v. Mass. Dep't of Pub. Utilities*, 941 F. Supp. 233, 237 (D. Mass. 1996). In *Greensboro Lumber Co.*, biofuel facility operators claimed that their utility failed to provide the facility with back-up and maintenance power at non-discriminatory, just and reasonable rates. *Greensboro Lumber*, 643 F. Supp. at 1374.

---

[8] A qualifying small power producer is "the owner or operator of a qualifying small power production facility." 16 U.S.C. § 796(17)(D). A small power production facility is:

> an eligible solar, wind, waste, or geothermal facility, or a facility which—(i) produces electric energy solely by the use, as a primary energy source, of biomass, waste, renewable resources, geothermal resources, or any combination thereof; and (ii) has a power production capacity which, together with any other facilities located at the same site . . . is not greater than 80 megawatts;

*Id.* at § 796(17)(A). A facility qualifies if it produces less than 80 megawatts of power, of which 75% or more is generated by renewable energy, and certifies with FERC (unless the facility produces less than 1 megawatt). *See* 18 C.F.R. § 292.203(a). Setting aside standing discussions for now, Plaintiffs are qualifying small power producers because they own or operate solar facilities of less than 1 megawatt which are entirely solar. *See* Compl. at ¶¶ 8–18.

Deferring to FERC's interpretation of the statute,[9] the *Greensboro Lumber* Court categorized the claims as "as-applied" challenges because the facility was not challenging the existence of an implantation plan. *Id*. Instead, the court saw the claims as attacking a failure to "adhere to its own implementation plan in its dealings with a particular qualifying facility." *Id*. The *Greensboro Lumber* Court concluded that such claims properly belong in state court under Section 210(g). *Id*. Similarly, in *Mass. Inst. of Tech.*, a cogeneration facility challenged a utility service cost for customers starting to generate their own power. *Mass. Inst. of Tech*, 941 F. Supp. at 235. The *Mass. Inst. of Tech.* Court differentiated between the two types of claims, explaining that:

> [a]n implementation claim . . . involves a contention that the state agency has failed to implement a lawful implementation plan under § 210(f) of PURPA. An as-applied claim, in contrast, involves a contention that the agency's implementation plan is unlawful, as it applies to or affects an individual petitioner.

*Id.* at 237. The *Mass. Inst. of Tech.* Court reasoned that because the cogeneration facility did not challenge the overall validity of the charge for all facilities, just the effect it had on itself, that was an as-applied challenge that belonged in state court under Section 210(g). *Id*.

The Tenth Circuit has not considered this issue, which appears to have been addressed once, only very recently, in the District of New Mexico. *See Great Divide Wind Farm 2 LLC v. Becenti Aguilar*, 405 F. Supp. 3d 1071 (D.N.M. 2019). In *Great Divide*, a wind farm project, seeking to enter into a legally enforceable purchase obligation ("LEO") with a utility, challenged a New Mexico Public Regulation Commission ("NMPRC") order for failing "to implement PURPA consistent with federal law and FERC's regulations." *Id*. at 1078. In an attempt to implement 18 C.F.R. 292.304(d), NMPRC promulgated Rule 570, requiring "[e]ach utility [to]

---

[9] *See Policy Statement Regarding the Commission's Enf't Role Under Section 210 of the Pub. Util. Regulatory Policies Act of 1978*, 23 FERC ¶ 61304 (1983).

purchase power from a qualifying facility from the date of interconnection at the utility's avoided cost." *Id*. at 1077 (quoting N.M. Code R. § 17.9.570.9(A)). Rule 570 did not define "legally enforceable obligations" as described in FERC's rule, so the wind farm plaintiff petitioned the NMPRC to declare that a utility had a LEO to purchase the wind farm's output when the projects would begin "commercial operation" in 2020. *Great Divide*, 405 F. Supp. 3d at 1077. In the administrative proceeding, the NMPRC determined that, "because the [wind farm] Projects were not built, they did not meet [R]ule 570's interconnectedness requirement." *Id*. Because the wind farm did not meet Rule 570's requirements, there was no LEO on behalf of the utility. *Id*. The wind farm plaintiff then filed its complaint with FERC, which declined to intervene; subsequently, the wind farm plaintiff sued the NMPRC commissioners in district court. *Id*. at 1078.

The district court, on a motion to dismiss, concluded that it lacked jurisdiction over the complaint because it raised an application, rather than implementation, challenge. *Id*. at 1096. Starting with the application-versus-implementation framework, the court noted that while "[a] party bringing an as-applied challenge to a state's actions under PURPA must bring the challenge in [] state court, which [has] exclusive jurisdiction [over those challenges]." *Id*. at 1091 (footnotes omitted). Meanwhile, "[o]nly a federal court has jurisdiction to hear an as-implemented claim[.]" *Id*. at 1092. The *Great Divide* Court continued that "the category of as-implemented challenges includes more than contentions that a state agency has not acted to implement PURPA and the FERC regulations; a party may contend in an as-implemented claim that a state's actions to implement the laws violate PURPA and the FERC regulations." *Id*. at 1092. Furthermore, "[a]s-implemented challenges attack rules or practices of general applicability for violating PURPA or the FERC regulations. *Id*. at 1093. In contrast, "[a]n as-

applied claim involves a contention that the state agency's . . . implementation plan is unlawful, as it applies to or affects an individual petitioner . . . [a]s-applied claims include those claims in which a party contests how a state agency applied the state's regulations to the party." *Id.* at 1095. (internal quotation marks and citations omitted).

In *Great Divide*, the court categorized the complaint as an application challenge because "Great Divide complains about the [NMPRC] Order's application of [R]ule 570 and NMPRC caselaw to it [] and wants relief from the [NMPRC] Order as it affects itself." *Id.* at 1098 (internal citations omitted). The wind farm plaintiff did not generally "challenge [R]ule 570's lawfulness or the lawfulness of the NMPRC's interpretation of [R]ule 570[,]" nor did the plaintiff "target the regulatory actions creating the generally applicable rule that [the plaintiff] opposes." *Id.* at 1098–99. Instead, as the court saw it, because "[t]he Complaint seeks relief from an application of law to fact[,]" the complaint could not have been an implementation challenge. *Id.* at 1099. Accordingly, the court dismissed the complaint for lack of jurisdiction but also allowed the wind farm plaintiff to restyle a new complaint in the form of an implementation challenge. *Id.* at 1102.

Though the Court agrees with the disposition in *Great Divide*, the Court disagrees with the implementation-versus-application approach taken in it and similar cases. This approach belies the plain language of the statute. Instead, the Court believes that the starting point of its analysis should begin with the statutory language. *See Chickasaw Nation v. United States,* 208 F.3d 871, 876 (10th Cir. 2000), *aff'd*, 534 U.S. 84 (2001) (noting that analysis should start with the plain language of the statute). The words of a statute must be construed in their "ordinary, everyday sense." *Id.* (internal citations omitted). In construing a statute, courts "are obliged to give effect, if possible, to every word Congress used." *Negonsott v. Samuels*, 933 F.2d 818, 819

13

(10th Cir. 1991), *aff'd*, 507 U.S. 99 (1993) (quoting *Reiter v. Sonotone Corp.,* 442 U.S. 330, 339 (1979)). Where a court could interpret statutory language multiple ways, it should "choose a meaning that gives full effect to all the provisions of the statute . . . so that their provisions are harmonious with each other." *Negonsott*, 933 F.2d at 819. A court "must look to the particular statutory language at issue, as well as the language and design of the statute as a whole." *In re Overland Park Fin. Corp.*, 236 F.3d 1246, 1251–52 (10th Cir. 2001) (quoting *True Oil Co. v. Commissioner of Internal Revenue,* 170 F.3d 1294, 1299 (10th Cir. 1999)).

The difference in phrasing between PURPA Sections 210(g) and 210(h) makes a significant difference in interpreting a statute that "has long vexed utilities, qualifying facilities, state utility commissions, and even FERC itself." *Portland Gen. Elec. Co.*, 854 F.3d at 697. Section 210(g) provides for state judicial review "respecting any proceeding conducted by a . . . nonregulated electric utility for purposes of *implementing any requirement of a rule* under [Section 210](a) . . . ." 16 U.S.C. § 824a–3(g)(1) (emphasis added). Section 210(h) empowers FERC, or a petitioning party when FERC declines to intervene, to "*enforce the requirements of* [*Section 210*](*f*) against any State regulatory authority or nonregulated electric utility" in federal district court. 16 U.S.C. § 824a–3(h)(2) (emphasis added).

These two jurisdictional sections concern different aspects of Section 210. Section 210(g) relates to FERC's rules promulgated under Section 210(a), and the requirements of those rules. Section 210(h) relates to Section 210(f), which requires state and local utility commissions to incorporate FERC's rules into their own rules and ratemaking requirements. According to FERC:

> Under section 210(f) of PURPA, State regulatory authorities and nonregulated
> electric utilities are required to implement [FERC]'s rules described above.
> [FERC] has indicated that the obligation to implement section 210 rules is a
> continuing obligation. This requirement may be fulfilled either: 1) through the
> enactment of laws or regulations at the State level; 2) by application on a case-by-
> case basis by the State regulatory authority, or nonregulated utility, of the rules

adopted by [FERC]; or, 3) by any other action reasonably designed to implement [FERC]'s rules.

*Policy Statement Regarding the Commission's Enf't Role Under Section 210 of the Pub. Util. Regulatory Policies Act of 1978*, 23 FERC ¶ 61304, 61644 (1983). The Court agrees that a failure to perform any of these actions would constitute a failure to implement under Section 210(f).

The Court interprets Section 210 to work like this: First, FERC issues a rule under Section 210(a). Second, a state PUC or nonregulated independent utility implements that rule by incorporation into its procedures or regulations under Section 210(f). Then, an aggrieved party may challenge in state court whether or not that PUC or nonregulated utility's actions comply with FERC's requirements under Section 210(g). If a PUC or nonregulated utility outright fails to implement a FERC rule, FERC (or a petitioning party on FERC's behalf) may step in and force them do so under Section 210(h), either through FERC administrative proceedings or in federal district court. This reading moves away from the "application" and "implementation" debate, and focuses on distinguishing compliance with FERC rules versus compliance with PURPA's mandate to make reasonable implementation efforts. Federal jurisdiction under Section 210(h) should not be stretched to cover disputes over *how well* a regulatory entity implements FERC's rules or the propriety of that entity's state or local rules.

This interpretation fits with the context of the statute and its neighboring provisions. Section 210(g)(2) allows "[a]ny person (including the Secretary) [to] bring an action against any electric utility, qualifying small power producer, or qualifying cogenerator to enforce any requirement established by a State regulatory authority or nonregulated electric utility pursuant to [Section 210(f)]." 16 U.S.C. § 824a–3(g)(2). Section 210(g)(2) concerns compliance with state or local rules implementing FERC rules, while Section 210(g)(1) concerns compliance with

FERC rules. For illustration, if a state PUC approved a utility's proposed rate that discriminates against renewable generators in violation of FERC's mandates, the offended generators could sue the PUC in state court under Section 210(g)(1). Or, if a utility charged a rate that discriminated against solar users, contrary to the state's FERC-based rule, the state PUC could sue the utility under Section 210(g)(2). PURPA thus leaves post-implementation disputes in the hands of the state courts.

Section 210(h) similarly cabins federal judicial authority to review of federal issues. Section 210(h)(1) treats FERC interstate transmission rules as rules enforceable under the FPA. *See* 16 U.S.C. § 824a–3(h)(1); *see also New York*, 535 U.S. at 5 (discussing FERC's direct regulation of interstate electricity). FERC enforcement of FPA rules belongs exclusively in federal courts. *See* 16 U.S.C. § 825p; *see also Portland Gen. Elec. Co.*, 854 F.3d at 699. As the D.C. Circuit noted:

> Subsection (h)(1) addresses those situations where enforcing a PURPA rule necessarily requires regulating those "operations of an electric utility [] . . . or a qualifying small power production facility [] which are subject to the jurisdiction of the Commission under part II of the Federal Power Act." 16 U.S.C. § 824a–3(h)(1). In other words, if a PURPA enforcement action, in effect, regulates interstate transmission or wholesale generation—matters falling squarely within FERC's exclusive Federal Power Act authority—then FERC, not the state, oversees the enforcement action.
> . . .
> Subsection (h)(2) addresses a very different situation, *i.e.*, where a state [or nonregulated utility], contrary to PURPA section 210(f), fails to "implement" FERC's PURPA rules. In such a case, subsection (h)(2) gives FERC authority to direct the state utility commission to comply, which [FERC] accomplishes by treating PURPA's implementation obligation "as a rule enforceable under the Federal Power Act."

*Portland Gen. Elec. Co.*, 854 F.3d at 699–700. For Section 210(h)(1), the federal issue is regulation of interstate transmission or wholesale generation of electricity, over which FERC has

exclusive authority.[10] *See id.* For Section 210(h)(2), the federal issue is a PUC or nonregulated

utility failing to implement federal law. *See id.* at 700. FERC may then step in and compel

compliance with the implementation mandate. *Id.* To illustrate, FERC could enforce PURPA

against a PUC for completely failing to adopt FERC's anti-discrimination requirement in the

PUC's rules or procedures.

Furthermore, Section 210(g) allows judicial review "in the same manner, and under the

same requirements, as judicial review may be obtained under section 2633 of this title in the case

of a proceeding to which section 2633 of this title applies." 16 U.S.C. § 824a–3(g)(1). PURPA

Section 2633 states:

> Notwithstanding any other provision of law, no court of the United States shall
> have jurisdiction over any action arising under any provision of subchapter I or II
> or of this subchapter except for—
>> (1) an action over which a court of the United States has jurisdiction under
>> subsection (b) or (c)(2); and
>> (2) review of any action in the Supreme Court of the United States in
>> accordance with sections 1257 and 1258 of Title 28 [appeal from a state
>> supreme court]

16 U.S.C. § 2633(a). Section 2633(a) largely forecloses federal jurisdiction under PURPA. Its

first exception, Section 2633(b), allows the Secretary of Energy to enforce, in federal court, the

Secretary's right to intervene and participate in "any ratemaking proceeding or other appropriate

regulatory proceeding relating to rates or rate design which is conducted by a State regulatory

authority . . . or by a nonregulated electric utility." *Id.* at § 2633(b)(1); *see also* 16 U.S.C. §

2631(a) (detailing the Secretary's right to intervene). Section 2633(b) also allows utilities and

electricity consumers to enforce, in federal court, their right to intervene in such proceedings if

they were first "denied such right by any State court[.]" *Id.* at § 2633(b)(2). The federal court

---

[10] For a helpful example of this scenario, the *Portland Gen. Elec. Co.* Court hypothesized a wind farm that was subject to FPA sales rate regulations, while simultaneously subject to a state's purchase rate regulations. *See* 854 F.3d at 700. In this scenario, FERC would resolve the conflict by enforcing PURPA under Section 210(h)(1) to exclude state regulation. *Id.*

may "require the State regulatory authority or nonregulated electric utility to permit such intervention and participation, and such court shall have jurisdiction to grant appropriate relief." *Id*.

Section 2633(c) is also very instructive. Section 2633(c)(1) states:

Any person (including the Secretary) may obtain review of any determination made under subchapter I or II or under this subchapter with respect to any electric utility (other than a utility which is a Federal agency) in the appropriate State court if such person (or the Secretary) intervened or otherwise participated in the original proceeding or if State law otherwise permits such review. Any person (including the Secretary) may bring an action to enforce the requirements of this chapter in the appropriate State court, except that no such action may be brought in a State court with respect to a utility which is a Federal agency. Such review or action in a State court shall be pursuant to any applicable State procedures.

*Id.* at § 2633(c)(1). Section 2633(c)(1) commands state court jurisdiction over state and local utility-related decisions. Section 2633(c)(2), the second exception to state jurisdiction, mirrors Section 2633(c)(1) almost word-for-word, with the key difference being that a determination by a federal agency is reviewable in federal court. *Id.* at § 2633(c)(2). Read as a whole, Section 2633 presumes state court judicial review under PURPA except where: (1) a plaintiff seeks to vindicate a federal right to intervene in ratemaking proceedings; or (2) a plaintiff seeks review of a federal agency's decision. *See* 16 U.S.C. § 824a–3(g)(1). Reading Sections 210 and 2633 in conjunction, the statute presumes state court jurisdiction except in narrow circumstances to vindicate federal rights.

The history of the FPA bolsters this reading of the statute. The FPA did not completely displace state and local regulatory authority over electrical utilities. *See New York*, 535 U.S. at 6. The FPA filled the gap of regulating interstate transmission or wholesale generation in the growing electrical network. *Id*. PURPA directed state and local authorities to open their networks to small, renewable power generators. *See Mississippi*, 456 U.S. at 751. PURPA did nothing to

18

disrupt the balance of regulation between FERC and the states—PURPA merely added in new requirements and compelled state courts to hear federal PURPA-based claims as they would any other federal claim. *Id*. at 760; *see also Testa v. Katt*, 330 U.S. 386, 393–94 (1947).

Section 210(g) says nothing about "application" of a rule or the distinction between challenging a rule "as-applied" to one discrete party instead of broad applicability. Similarly, Section 210(h) does not include judicial review of whether a "state's actions to implement the laws violate PURPA and the FERC regulations." *Great Divide*, 405 F. Supp. 3d at 1092. The Court will not read into the statute language that is not already there, nor will it stretch its jurisdiction beyond what the statute allows simply because a party creatively employs the word "implement." Either a PUC or nonregulated utility implements a FERC rule or it does not. Whether they do so correctly, or consistent with FERC rules, is something PURPA specifically consigns to state court adjudication under Section 210(g). *See* 16 U.S.C. § 824a–3(g)(1). Furthermore, "[b]ecause this is a scheme whereby a default rule is subject to an exception," the Court is "guided by the interpretive principle that exceptions to a general proposition should be construed narrowly." *In re Woods*, 743 F.3d 689, 699 (10th Cir. 2014). "Flowing from this interpretive principle . . . is the related concept that exceptions must not be interpreted so broadly as to swallow the rule." *Id*. Plaintiffs argue that because Defendant set rates that did not use accurate data or reflect consistent systemwide costing principles, Defendant failed to "implement" FERC's 18 C.F.R. § 292.305 non-discrimination rule. *See* Compl. ¶ 1–2. Accepting Plaintiffs' argument, that Defendant's failure to meet the FERC's non-discrimination mandate constitutes a failure to implement PURPA altogether, would allow the exception (federal jurisdiction) to swallow the rule (state jurisdiction). By this logic, any time a PUC or nonregulated utility acts inconsistently with FERC's rules, the utility or PUC has failed their

duty to implement—even if they have implemented regulations or procedures analogous to, though inconsistent with, FERC rules.

Plaintiffs cite to *ConocoPhillips Co. v. Dep't of Water & Power, City of Los Angeles*, No. CV075742ABCJTLX, 2008 WL 11422174, at *3 (C.D. Cal. June 20, 2008) to support their contention. In *ConocoPhilips*, a cogeneration facility challenged the electricity rate set by their utility as violative of 18 C.F.R. § 292.305. *Id*. The *ConocoPhilips* Court used the "implementation" versus "as-applied" distinction followed by many other district courts. *See id*. The court held that the plaintiff raised an implementation claim because the "rate [allegedly did] not comply with a FERC rate regulation implementing PURPA." *Id*. The *ConocoPhilips* Court made no mention of what rules or processes the utility employed in setting the rate or whether those rules reasonably implemented FERC's rules. *ConocoPhilips* suffers from the same overbreadth flaw as Plaintiffs' argument—rather than looking at the nature of the utility's implementation, the court looked at whether a utility decision complied with a FERC rule's requirements. By its plain reading, Section 210(g) therefore should have applied to the plaintiff's claims and the court should not have exercised jurisdiction. The Plaintiff's approach guts the statute's state-court jurisdictional provisions and leaves almost any PURPA dispute to the federal courts, so long as a plaintiff pleads a certain way. Plaintiffs' reading of the statute would significantly expand the power of federal courts in conflict with the text and design of PURPA. The Court will not read PURPA as Plaintiffs suggest.

Plaintiffs also cite to the Fifth Circuit's opinion in *Exelon II*, 766 F.3d at 392, one of the leading cases on PURPA's jurisdictional provisions. *Exelon II*, however, highlights the lack of consistency in the application-implementation approach. One court may interpret a PUC's failure to properly comply with a PURPA rule as an implementation failure. Another court may view

the same action as the improper application of a FERC rule to a specific circumstance, rendering it an application failure. Comparing decisions in the *Exelon* line of cases reveals that the line between application and implementation challenges can be hard to distinguish. In *Exelon Wind 1, LLC v. Smitherman*, No. A-09-CA-917-SS, 2012 WL 4465607, at *4 (W.D. Tex. Sept. 25, 2012) ("*Exelon I*"), a Texas wind farm plaintiff challenged an adverse PUC determination under Section 210(h). Because of the intermittent nature of the wind farm's generating capacity, the PUC had deemed the nature of the wind farm's power to be "nonfirm." *Id*. As a result, the wind farm plaintiff's utility would not need to enter into a LEO under 18 C.F.R. § 292.304(d). *Id*. at *5. The *Exelon I* court concluded that, though the PUC's decision "left open three interrelated factual possibilities by which a wind-generated power could be made firm[,] . . . what [the PUC] has nevertheless done is stated a rule which prevents stand-alone, wind-energy [qualifying facilities] from ever [entering into] a LEO unless they can provide firm energy." *Id*. at *11. Because the *Exelon I* Court saw this result as the PUC's failure to implement FERC's LEO requirements categorically, it considered the complaint to be an implementation challenge. *Id*.

On appeal, the Fifth Circuit disagreed with the district court's conclusion. *See Exelon II*, 766 F.3d at 385. Because the PUC's decision "left open the possibility that other wind generators might be able to comply with the firm power requirement," the Fifth Circuit saw the decision as only applicable to the one wind farm plaintiff. *Id*. at 391. Thus, the complaint was an application challenge over which a federal court had no jurisdiction. *Id*. The fact that the PUC's reasoning and decision may apply to similarly situated qualifying facilities in the future did not transform the claims into "implementation" challenges. *Id*.

The Court does not see a legally significant distinction between the conclusions of the two *Exelon* decisions. A PUC's (or nonregulated utility's) decisions either meet the requirements

of a FERC rule or they do not. Likewise, a PUC or utility implements a FERC rule or they do not. Failing to meet a rule's requirements does not mean that a utility failed to implement the rule itself. This application-implementation approach also asks the wrong question: "Does a decision affect parties discretely or categorically?" Whether a utility fails to meet a rule's requirements categorically or only with respect to a discrete group, however, should make no difference under the statute. In the *Exelon* cases, those courts should have lacked jurisdiction not because the PUC's decision misapplied a FERC rule to only the one wind farm, but because the PUC's decision allegedly failed to meet the FERC rule's LEO requirements. In those cases, the PUC (via the state) attempted to implement the FERC LEO rule through 16 Tex. Admin. Code § 25.242(c). *See Exelon II*, 766 F.3d at 385. The PUC therefore satisfied its obligation to implement PURPA. Whether 16 Tex. Admin. Code § 25.242(c) complies with 18 C.F.R. § 292.304(d) is a different matter entirely, one the Court believes is appropriately left to state courts.

*Great Divide* similarly misses this mark. The district court suggested that the plaintiff could have raised an implementation claim by "ask[ing] for relief declaring [R]ule 570 invalid or declaring the NMPRC's interpretation of [R]ule 570 invalid." *Great Divide*, 405 F. Supp. 3d at 1099. Instead, because the wind farm plaintiff only challenged Rule 570 as it applied to itself, the court deemed the complaint an application challenge it could not entertain. *Id*. Again, this is a distinction without a difference. Jurisdiction over the subject matter of the complaint—whether Rule 570 complies with FERC's rule—should not change based on a plaintiff challenging only on its own behalf. Section 210(g) applied in *Great Divide* not because the complaint was discrete to the plaintiff, but because PURPA forecloses federal jurisdiction over challenges to compliance with FERC rules.

Applying Section 210 to this case, the Court concludes that it cannot grant the relief Plaintiffs seek in their Complaint due to Section 210(g)'s jurisdictional restrictions. Plaintiffs allege that Defendant's adoption of the Standby Service Riders violates FERC's rule at 18 C.F.R. § 292.305(a). *See* Compl. at ¶ 42. Though styled as such, this is not a challenge to Defendant's implementation of 18 C.F.R. § 292.305(a). Instead, Plaintiffs challenge whether Defendant's decision to employ the Standby Service Riders complied with an applicable FERC rule. Even assuming that Defendant based the Standby Service Riders on inaccurate data, incorrect assumptions, and inconsistent costing principles, the Court cannot infer that Defendant either lacks a nondiscrimination rule or failed to go through the rule implementation process outright. Plaintiffs must present "a complaint with enough factual matter (taken as true) to suggest" that Defendant failed to implement FERC's rule. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). Plaintiffs' obligation to provide the grounds for their entitlement to relief "requires more than labels and conclusions[.]" *Id*. at 555. Plaintiffs' factual allegations "must be enough to raise a right to relief above the speculative level." *Id*. Plaintiffs certainly raise the possibility that Defendant did not implement FERC's rules as required, but Plaintiffs need to allege sufficient facts to make the leap from possibility to plausibility. The Complaint currently lacks such facts. The Court cannot reasonably infer from a utility's decision inconsistent with a FERC rule that the utility lacks a corresponding FERC rule by which the utility could have decided. Because Plaintiffs do not allege sufficient facts to constitute a claim under Section 210(h), Section 210(g) applies and the Court lacks subject matter jurisdiction over this case. Defendant's arguments regarding standing are therefore moot. Accordingly, the case should be dismissed.

Dismissal under Rule 12(b)(6) is ordinarily with prejudice unless otherwise specified. *See* Fed. R. Civ. P. 41(b). The Court recognizes that, in light of the original posture of this Motion

and the Court's departure from the rationale of other courts on this issue, dismissal with prejudice would be an unduly harsh remedy. Instead, the Court will dismiss the case without prejudice to allow Plaintiffs to either bring this claim before the proper state court or to refile in this Court alleging sufficient facts regarding Defendant's failure to implement 18 C.F.R. § 292.305(a).

IT IS THEREFORE ORDERED that:

(1) DEFENDANT CITY OF FARMINGTON'S NOTICE OF PARTIAL MOTION AND PARTIAL MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION (Doc. No. 11) is GRANTED.

(2) This case is DISMISSED without prejudice.


_____

SENIOR UNITED STATES DISTRICT JUDGE